## Ronald E. GROVER *v.* Valarie K. GROVER

CA 07-553                                                      276 S.W.3d 740

### Court of Appeals of Arkansas
### Opinion delivered February 20, 2008

*Laws & Murdoch, P.A.,* by: *Allen Laws,* for appellant.

*Peel Law Firm, P.A.,* by: *Jennifer L. Modersohn,* for appellee.

WENDELL L. GRIFFEN, Judge. This is the second time these parties are before us. In *Grover v. Grover,* CA

06-118 (Ark. App. Sept. 27, 2006) (not designated for publication) (*Grover I*), we reversed and remanded for reconsideration of the validity of a reconciliation agreement reached by the parties after they agreed to no longer pursue a divorce. On remand, the circuit court set aside the reconciliation agreement, finding it to be unreasonable and not entered into voluntarily by appellee Valarie Grover.[1] Appellant Ronald Grover appeals again, contending that the circuit court misapplied Florida law when it set aside the reconciliation agreement or, alternatively, that appellee freely entered into the agreement. We affirm, holding that the circuit court did not err in setting aside the agreement when the evidence showed that appellee entered into the agreement under circumstances constituting duress.

As the circuit court took no additional evidence on remand, most of the facts recounted herein are adopted from *Grover I*. The parties were married on December 26, 1990. They met while appellant was stationed at Little Rock Air Force Base in December 1987 or January 1988. Appellant was later transferred to Germany, and appellee followed in May 1989 while pregnant with their son. The parties later moved to Florida. The parties separated in July 1993, and appellant filed for divorce. However, the parties decided not to pursue the divorce. On March 28, 1994, they signed the following agreement:

> WHEREAS, the parties, [Appellant and appellee], have reconciled their marital differences and no longer desire to proceed with the dissolution of marriage action.
>
> NOW, THEREFORE, it is agreed and stipulated as follows:
>
> 1. [Appellee] hereby waives any right, title or interest she may have to [appellant's] military retirement, *now or in the future*.[2]
>
> 2. [Appellee] hereby agrees to quit-claim her interest in the parties' marital home . . . to [appellant].
>
> 3. [Appellant] hereby agrees to hold [appellee] harmless for any and all debts and liabilities associated with the marital home.

---

[1] Like last time, some of the documents in this case refer to appellee as "Valarie Grover," while others refer to her as "Valerie Grover." As we did in *Grover I*, we refer to her as "Valarie Grover." *See Grover I*, slip op. at 1 n.1.

[2] The emphasized portion was handwritten and initialed by appellee.

4. This Agreement constitutes the entire agreement between [appellee and appellant] and supersedes any prior understandings or written or oral agreements or representations between the parties respecting the within subject matter. It shall not be amended, altered, or changed except by a written agreement signed by the parties hereto.

The parties dispute the circumstances under which the agreement was entered. Appellee testified that she moved back to Arkansas when appellant filed for the first divorce. However, the couple decided to reconcile, and she moved to Florida to be with him. According to appellee's testimony, the couple went to appellant's attorney's office, where she was presented with the reconciliation agreement. She testified that appellant conditioned the reconciliation upon her signing the agreement and that, had she not signed the agreement, she would have had to return to Arkansas. Appellee also testified that she agreed to sign the reconciliation agreement only after appellant agreed to get counseling and move back to Arkansas. She stated that her attorney never saw the agreement and that appellant did not give her a list of his assets or tell her the approximate value of his military retirement.

Appellant testified that appellee had not moved from Arkansas when she signed the agreement. He stated that appellee had been in Florida for one day prior to signing the agreement and that her belongings were still in Arkansas at the time. Regarding the reconciliation agreement, he testified that the agreement was a safeguard that he and appellee put together in his attorney's office and that appellee's attorney was involved in the meeting through telephone contact. He noted that there is nothing written in the agreement regarding counseling or moving away from Fort Walton.

The parties followed through with a second divorce filed in Johnson County. In a letter opinion dated June 15, 2005, the circuit court set aside the reconciliation agreement, finding that the agreement was "so unfair as to be shocking." It opined that the agreement was executed more in contemplation of divorce rather than in encouragement of reconciliation and that the agreement was so one-sided as to be patently unfair. Accordingly, the court awarded appellee an undivided one-half interest in the marital home in Florida and one-half of a 12/22 interest in appellant's military account. The court's findings were incorporated into an order entered August 10, 2005. Appellant pursued an appeal, and

we reversed and remanded, holding that the circuit court misapplied Florida law when it set aside the agreement. *See Grover I, supra.*

On remand, the circuit court considered briefs submitted by the parties and issued an order on February 9, 2007, again setting aside the reconciliation agreement and dividing the military account and marital home. After recounting the law as stated by our previous opinion, the court applied *Casto v. Casto*, 508 So. 2d 330 (Fla. 1987), and again found the agreement to be unreasonable, which according to the circuit court raised a rebuttable presumption that appellee did not freely enter into the agreement. In finding that appellant did not rebut that presumption, the court stated:

> First, the court explores the issue of whether or not [appellant] made a full and frank disclosure to [appellee] of all the marital property and the income of the parties. This court finds, based upon the evidence submitted, that full and complete disclosure was not made to [appellee] concerning [appellant's] future military benefits. This court agrees with the argument advanced in [appellee's] brief that [appellant] had no means of obtaining the value of his future military retirement benefits because this would have been unknown at the time the reconciliation agreement was entered into. It is also interesting to note that the phrase "NOW OR IN THE FUTURE" contained on page one of the reconciliation agreement was handwritten and initialed by the parties as an apparent last minute addition. Also, there does not appear anywhere on the reconciliation agreement a signature line for attorneys who may have been representing either of the parties.
>
> This court further finds that at the time that [appellee] signed the reconciliation agreement that she was not represented or advised by an attorney regarding the matter. This court further finds that the parties had already agreed to reconcile and that [appellee] had returned to Florida on the basis of this reconciliation and resumption of their fiduciary relationship as husband and wife.
>
> This court further finds that after [appellee] and the parties' minor child had moved back to Florida based upon the reconciliation that she was then presented with the reconciliation agreement and advised that if she didn't sign the same that [appellant] would divorce her and that she would have to return to Arkansas. Under this duress, she then signed the reconciliation agreement which did

not make full and fair complete disclosure of the value of any future military benefits which [appellant] might acquire during their marriage a share of which she would be entitled to receive. Furthermore, she did not have the advice or representation of legal counsel at the time.

In short, this court finds that this case is very much similar to the case of . . . *Hjortass v. McCabe,* 656 So. 2d. 168 (Fla. Ct. App. 1995) cited in the mandate from the Arkansas Court of Appeals. [Appellee] was placed under duress having been presented with this agreement upon her arrival back in Florida, threatened by her husband with divorce and not having the advice of legal counsel in regard to this matter. More importantly, the agreement itself cannot begin to represent full and complete disclosure of the value of all the marital assets. Regardless of any discovery done in the Florida divorce proceeding which both parties had agreed not to pursue, the reconciliation agreement should have met the minimum requirement of full and complete disclosure of all marital assets and their respective values and it simply did not do so.

We review traditional cases of equity, such as domestic relations proceedings, de novo. *Cole v. Cole,* 82 Ark. App. 47, 110 S.W.3d 310 (2003). We review the lower court's findings of fact and affirm unless those findings are clearly erroneous or clearly against the preponderance of the evidence. *Williams v. Williams,* 82 Ark. App. 294, 108 S.W.3d 629 (2003); *Powell v. Powell,* 82 Ark. App. 17, 110 S.W.3d 290 (2003). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Cole, supra.* In reviewing the lower court's findings, this court gives due deference to the circuit judge's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hunt v. Hunt,* 341 Ark. 173, 15 S.W.3d 334 (2000).

In *Grover I,* we explained Florida law regarding a motion to set aside a postnuptial agreement:

A correct statement of Florida law regarding setting aside postnuptial agreements is found in *Casto v. Casto,* 508 So. 2d 330 (Fla. 1987). Under Florida law, a spouse may set aside or modify a postnuptial agreement by establishing that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching. *Id.* Overreaching is defined as "that which results from an inequality of bargaining power or other circumstances in which there is an

absence of meaningful choice on the part of one of the parties."
*Schreiber v. Schreiber*, 795 So. 2d 1054, 1057 n.3 (Fla. Ct. App. 2001)
(citing *Black's Law Dictionary* 1104 (6th ed. 1990)). Even though an
agreement is one-sided and unfair, that alone does not make it the
result of overreaching absent a showing that the agreement resulted
from an inequality of bargaining power or other circumstances such
that there was no meaningful choice on the part of the disadvan-
taged party. *Id*. "[O]verreaching involves the situation where one
party, having the ability to force the other into an unfair agreement,
does so." *Id*. at 1057.

In the alternative, the spouse may seek to set aside a postnuptial
agreement on the basis that the agreement is unfair or unreasonable,
given the circumstances of the parties. *Casto v. Casto, supra*. To
establish unreasonableness, the party seeking to set aside the agree-
ment must show that the agreement does not adequately provide for
the challenging spouse and, consequently, is unreasonable. *Id*.
However, this does not end the court's inquiry. Once the challeng-
ing spouse establishes that the agreement is unreasonable, a pre-
sumption arises that there was either concealment by the defending
spouse or a presumed lack of knowledge by the challenging spouse
of the defending spouse's finances at the time the agreement was
reached. *Id*. This presumption may be rebutted by the defending
spouse by showing that (a) a full, frank disclosure to the challenging
spouse by the defending spouse before the signing of the agreement
relative to the value of all the marital property and the income of the
parties, or (b) a general and approximate knowledge by the chal-
lenging spouse of the character and extent of the marital property
sufficient to obtain a value by reasonable means, as well as a general
knowledge of the income of the parties. *Id*. The *Casto* court
recognized that parties to a marriage are not dealing at arm's length
and that they may enter into bad fiscal agreements for any reason;
however, "[i]f an agreement that is unreasonable is freely entered
into, it is enforceable." *Id*. at 334; *see also Waton v. Waton*, 887 So. 2d
419 (Fla. Ct. App. 2004).

Further, in *Macar v. Macar*, 803 So. 2d 707 (Fla. 2001), the
Florida Supreme Court announced that, when challenging a settle-
ment agreement entered into after the commencement of litigation
and the utilization of discovery procedures, a party seeking to set
aside a settlement agreement must challenge the settlement under
Fla. R. Civ. P. 1.540 (similar to Fed. R. Civ. P. 60), which would only

allow for the agreement to be set aside in light of evidence of fraud or in light of newly discovered evidence that by due diligence could not have been discovered in time to move for a new trial or rehearing. If *Macar* governs, the *Casto* framework is inapplicable.

*Grover I*, slip op. at 8-10.

In this appeal, appellant contends that the circuit court erred in applying *Casto*. He argues that the agreement in this case was entered into after the parties had instigated litigation, making *Macar*, rather than *Casto*, applicable. In the alternative, he argues that the court erred in its application of *Casto*, contending that the circuit court erred in finding that the agreement was unreasonable and that appellee had full knowledge of his assets.

First, the circuit court did not err in applying *Casto*. Appellant argues that *Macar* is applicable because the parties had instituted litigation prior to signing the reconciliation agreement. However, the *Macar* rule does not automatically apply simply because the parties are engaged in litigation. The Florida Supreme Court explained:

> Our conclusion that *Casto* is inapplicable in these types of cases is based on the premise that *Casto*'s rationale assumes that the specific dissolution case has not proceeded to the procedural posture reached in *Macar*. That is, in deciding whether *Casto* or rule 1.540 should apply, our focus is on the fact that the challenging party here was afforded an opportunity to engage extensively in the discovery process. In cases where the agreement is reached after the initiation of litigation and the completion of discovery, parties challenging final judgments should not be permitted to claim lack of knowledge, because through due diligence, they could have unearthed all relevant facts.

*Macar*, 803 So. 2d at 712-13.

In other words, the *Macar* analysis applies when the party seeking to set aside a postnuptial agreement has had a full and fair opportunity to unearth all of the facts relevant to the other's financial position. Absent that opportunity, *Macar* does not apply. *See also Robinson v. Kalmanson*, 882 So. 2d 1086 (Fla. Ct. App. 2004) (rejecting application of *Macar* in an action to set aside a divorce and settlement agreement when the lower court placed a monetary restriction on discovery in the divorce action, and

holding that there existed a genuine issue of material fact regarding whether the former wife had a full opportunity to explore specific omissions in disclosures from the former husband).

■ In the present case, the circuit court explicitly found that appellant had not fully disclosed the nature of his military benefits, that the parties had ended the divorce litigation and resumed their fiduciary relationship, and that appellee signed the agreement without the benefit of legal counsel.[3] The rule in *Macar* is premised on the fact that the parties, being in full litigation, are no longer fiduciaries, but are dealing at arm's length. In other words, the primary justification for requiring the higher standard of Fla. R. Civ. P. 1.540 is absent here. Under the facts of this case, an analysis under *Casto* was proper.

In arguing that the circuit court erroneously applied *Casto*, appellant argues that the circuit court did not take into consideration the parties' relative situations when determining whether the reconciliation agreement was unfair or unreasonable. However, such an analysis was not necessary here. *Casto* provides two separate grounds under which a party can set aside a reconciliation agreement. The first is to show that the agreement was the product of fraud, deceit, duress, coercion, misrepresentation, or overreaching. If the court so finds, then it need not go further to set aside the agreement. Here, the court found that the reconciliation agreement was the product of duress. It compared the instant case to *Hjortass, supra* (cited in *Grover I*), where the Florida appellate court set aside a prenuptial agreement on the grounds of duress when the wife was presented with the agreement for the first time two days before the wedding, the actual terms of the agreement were previously unknown to her, and the agreement contained no information about the husband's finances. Appellant argues that appellee could have simply opted to not sign the agreement, returned to Arkansas with the parties' minor child, and pursued the divorce. However, this would be analogous to arguing in *Hjortass* that the wife-to-be could have refused to sign the agreement and

---

[3] While appellant notes his testimony that appellee's attorney participated in the drafting of the agreement via telephone, the circuit court credited appellee's testimony that she did not have the opportunity to obtain legal advice prior to signing the agreement. Our standard of review requires us to defer to the circuit court regarding this credibility determination. *Hunt, supra.*

call off the wedding.[4] Appellee's testimony shows that she had returned to Florida with the parties' minor child to begin reconciliation efforts.

█ The circuit court's finding that appellee signed the reconciliation agreement under duress, which is grounds for setting aside the agreement under Florida law, is not clearly erroneous. Accordingly, we affirm the circuit court's decision to set aside the agreement.

Affirmed.

VAUGHT and BAKER, JJ., agree.

[4] To the extent that appellant argues that appellee had the option of following through with the divorce, that argument would evidence intent not to follow through with reconciliation efforts, which would be tantamount to fraud. Such an argument may also confirm the circuit court's opinion in the original divorce decree "that the agreement was executed more in contemplation of divorce rather than in encouragement of reconciliation." *Grover I,* slip op. at 6.