2010 Ark. App. 821

**William J. BARNES, Appellant**

v.

**Deborah L. BARNES, Appellee.**

**No. CA 10–419.**

Court of Appeals of Arkansas.

Dec. 8, 2010.

James Walter Tilley, Bethany A. Pike, Watts, Donovan & Tilley, P.A., Little Rock, for appellant.

Barry Eugene Coplin, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

Appellant/cross-appellee, William (Bill) Barnes, and appellee/cross-appellant, Deborah Barnes, were married on December 17, 1994; separated in November 2007;

and were divorced on the ground of eighteen months' separation on February 2, 2010. Prior to marriage, on September 15, 1994, the parties entered into an antenuptial agreement ("agreement"), which set forth each party's rights with regard to assets in the event of death or divorce. Under this agreement, nonmarital property was to be kept separate in the event of divorce except as set forth within the agreement.

The divorce decree was entered on February 2, 2010. In it, the trial court found, among other things, that the agreement was valid and that the parties were bound by its |₂terms. The trial court divided the marital property and awarded Deborah alimony pursuant to the agreement in the amount of $12,973.25 per month for sixty months.

One of the assets contested at the divorce hearing was a Morgan Keegan account created during the marriage and initially held by the parties jointly with right of survivorship. Prior to the divorce hearing, Deborah had executed a letter of authorization allowing Bill to move the funds, which he had transferred into an account with only his name on it; however, she contended at trial that the account was marital property. The trial court deemed the account, valued at $1,529,542.91 as of October 1, 2007, to be marital property and ordered it equally divided, finding that although the letter of authorization allowed Bill to transfer the money, it did nothing more than allow him to transfer a marital asset to some other location.

After entry of the divorce decree, Bill filed a motion for new trial or, in the alternative, to amend the divorce decree. In this motion, Bill argued that the Morgan Keegan account was his separate property because it was funded with money from the sale of nonmarital assets; alternatively, he argued that the date of valuation of the Morgan Keegan account should not be October 2007 but rather December 2009, due to economic decline. He attached to his motion a December 31, 2009 statement from Morgan Keegan that indicated the value of the account was $1,171,313.10; however, this statement was not entered into evidence as an exhibit. Deborah filed a motion for attorney's fees, requesting $18,280 in fees and $140 in costs. As a result of these motions, the trial court, in an order filed on March 10, 2010, determined that the Morgan Keegan account was to be divided as of the date of the divorce |₃(February 2, 2010), and the parties were ordered to determine the value of the account as of that date; the trial court also denied Deborah's request for attorney's fees.[1] Bill now appeals from both the divorce decree and the March 10 order, arguing that the trial court erred in granting Deborah one-half of the Morgan Keegan account. Deborah filed a notice of cross-appeal, arguing that the trial court erred in dividing the Morgan Keegan account as of the date of divorce, in dividing the account equally, and in denying her request for attorney's fees. We affirm on both direct and cross-appeal.

## DIRECT APPEAL

■ Bill's sole point on appeal is that the trial court erred in finding that the Morgan Keegan account was marital property. His theory behind this argument is that the account was funded with money from the sale during marriage of his nonmarital assets (bank stock) and therefore it

---

1. Deborah also filed a motion to amend the divorce decree nunc pro tunc to reflect that she was awarded the divorce, not Bill. The trial court corrected this in the order, but it has no bearing on the issues on appeal.

belonged to him, even though he initially placed the proceeds into a joint account.

■ Equity cases are reviewed de novo, and the trial court's findings of fact are affirmed unless they are clearly erroneous or clearly against the preponderance of the evidence. *Grover v. Grover*, 101 Ark. App. 346, 276 S.W.3d 740 (2008). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed; in reviewing the trial court's findings, this court gives due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded to each witness's testimony. *Id.*

At the hearing, Bill testified that in the 1970s, he purchased 100 shares of stock in the First National Bank of Mount Ida for $75,000, and that when the holding company stock was sold in 2005, his share of the proceeds after taxes was a little over $1,500,000. Bill testified that he chose to put that money into a joint account with right of survivorship, not an account payable upon death to Deborah, noting that he had been battling cancer without a history of remission at that point, and that he wanted Deborah to have that money for herself if he did not survive. He said that there was no other reason that he placed the money into a joint account, and that he was fully aware at that time that the agreement provided that neither one of them could take against the estate of the other.

In April 2006, Bill learned that Deborah had a romantic affair at the end of 2005 and the beginning of 2006 that she had ended prior to Bill learning of it, and he became very angry with Deborah. Deborah's affair was the impetus for Bill to have Deborah sign the letter of authorization allowing him to transfer the funds that were in the joint account. While Bill testified that he did not threaten or coerce Deborah to sign the letter of authorization, Deborah testified that she did not sign the letter of authorization voluntarily. Although the funds remained in the joint account for a time, Bill eventually transferred them in October 2007 to an account bearing only his name.

The trial court made the following findings in the decree of divorce concerning the Morgan Keegan account:

13. *Morgan Keegan Account.* [Bill] opened a joint account in the names of William and Deborah Barnes, as joint tenants with rights of survivorship, in late 2005 or early 2006. On October 1, 2007, the value of this account was approximately $1,529,542.91. The account was opened with the proceeds from the sale of [Bill's] bank stocks, which were his pre-marital assets. [Bill] had been in poor health, suffering from cancer, and he testified that the account was opened in both names so that if his health condition worsened, he would be able to leave enough funds to his wife so that she could live comfortably.

15. After [Bill's] cancer went into remission, [Bill and Deborah] began growing apart. [Deborah] developed a friendship with an employee at the Turtle Cove Spa, which evolved into a two-month affair from December 2005 to January 2006, when she ended the relationship.

16. In April 2006, [Bill] learned of [Deborah's] affair and confronted her. Afterwards, the parties became estranged and had little contact with each other even though they lived in the same house.

17. [Bill] testified that he was very bitter with his wife for having an affair. On May 1, 2006, [Bill] contacted [Deborah] and presented her with a Letter of Authorization ("Letter") connected to the funds in the Morgan Keegan account, which states, "Please accept this letter as my authorization to transfer the following money or securities as listed." [Deborah] testified that she was intimidated into signing the Letter. During October 2007, [Bill] removed all of the funds from the joint account.

19. In June 2006, [Deborah] learned that her husband had been having an affair since October 2005 and that it was ongoing as of June 2006. The parties attempted to reconcile, but [Deborah] learned that [Bill] was still involved in his affair as of February 2008.

20. In any event, with respect to the 1.5 million dollars that was in the Morgan Keegan account, [Deborah] claims that she should be awarded the entire amount because of all the hard work and long hours she spent in helping [Bill] develop Mountain Harbor Resort and Spa as well as other properties which [Bill] owned. [Bill] does not dispute that the account was a joint asset, but he claims that [Deborah] returned her interest to him by signing the Letter.

21. The Court finds that the Letter does nothing more than allow [Bill] to transfer a martial asset to some other location. The Court finds that [Bill] gifted [Deborah] a marital interest in this asset when he placed his separate funds in the joint account for his intended purpose. Both parties are sophisticated business persons and have the business acumen to be aware of the significance of establishing a joint account.

22. [Bill] is ordered to transfer to [Deborah] the sum of $771,759.00, which represents half of the October 2007 value of the account, within sixty (60) days of this Decree.[2]

Bill argues on appeal that the agreement provides that each party's nonmarital property would be kept separate upon divorce, and that Deborah agreed that she would not be entitled to any of his nonmarital property if they divorced. He contends that the Morgan Keegan account was separate property that was funded by his nonmarital assets. He further argues that by signing the letter of authorization, Deborah authorized the assets to be returned to him as his nonmarital property. We disagree.

■ Once property is placed in the names of a husband and wife, with no specification of how they take, there is a presumption that the property is owned as tenants by the entirety, which may be overcome by clear and convincing evidence. *Lofton v. Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988). Bill cites *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000) and *Cole v. Cole*, 53 Ark. App. 140, 920 S.W.2d 32 (1996), for the proposition that joint accounts can be determined to be one party's separate property. However, in those cases, the trial courts determined that the party to whom the asset was awarded had rebutted the presumption that the property was owned as tenants by the entirety, and the appellate courts, under our standard of review, held

**2.** The trial court, in an order filed March 10, 2010, later ordered that the account be valued and divided as of the date of divorce instead of using the October 2007 value for division.

that those findings were not clearly erroneous. Here, Bill is asking this court to reverse the trial court's findings; however, under our standard of review, we cannot say that the trial court's finding that the account was marital property was clearly erroneous.

In the present case, the agreement, in paragraph 13(a), stated, "Nothing herein shall be construed to prevent either party from making voluntary gifts, devises, or bequests to the other Party nor shall such gifts, devises, or bequests be construed as amending this Agreement." At the hearing, Bill testified that he wanted to put the money in the Morgan Keegan account so that Deborah would have it for herself in case he did not make it; there was no other reason that he placed the money in a joint account. This testimony evidences Bill's intention to make a gift to Deborah. The fact that he later became angry at Deborah for having an affair and intimidated Deborah into signing the letter of authorization did not, as the trial court found, destroy the nature of the marital property; it merely allowed Bill to transfer the marital asset to another location. Bill's testimony indicated that his intention at the time he created the joint account was to provide for Deborah in case he succumbed to cancer. The trial court found that Bill gifted Deborah a marital interest in this asset when he placed his separate funds in the joint account for this intended purpose, and we cannot say that this determination is clearly erroneous.

## CROSS–APPEAL

### I. Date of Valuation of Morgan Keegan Account

Deborah argues that the trial court erred in valuing the Morgan Keegan account as of the date of the divorce (February 2, 2010) instead of at the October 2007 value that the trial court originally ordered in the divorce decree. A trial court's findings of fact with respect to division of property will be affirmed unless clearly erroneous, or against the preponderance of the evidence; a finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Roberts v. Yang,* 2010 Ark. 55, 370 S.W.3d 170.

Deborah argues that Bill never introduced evidence showing what the value of the account was after October 2007, and she argues, citing *Roberts v. Yang, supra,* that Bill cannot now argue that marital assets should be divided at the date of divorce when he failed to make that argument at trial. However, Deborah misconstrues the holding in *Roberts.* In that case, the supreme court held that Roberts did not raise the issue of valuing the marital property as of the date of divorce to the trial court, but rather raised it for the first time on appeal, and affirmed the trial court's ruling. Here, Bill raised the issue of valuation to the trial court in his motion for new trial, and the trial court ruled on that motion, changing the date of the valuation of the Morgan Keegan account from October 2007 to the date of the divorce, February 2, 2010. Therefore, this argument is properly before this court.

Deborah notes that Arkansas Code Annotated section 9–12–315(a)(1)(A) (Repl.2009) provides that all marital property shall be distributed one-half to each party at the time the divorce decree is entered unless the trial court finds such a division to be inequitable. However, she argues that this statutory provision does not state that the property must be valued as of the date of the divorce. In support of her argument, she cites the three-judge dissent in *Allen v. Allen,* 99 Ark. App. 292, 259 S.W.3d 480 (2007). This dissent has

no precedential value, and even if it did, it is distinguishable from the present case. The date relied upon by the dissent in *Allen* was one agreed upon by the parties, but it was the date of the divorce hearing, not the date of the entry of the divorce decree. In this case, there was no agreed-upon date. However, it would not matter because the law in Arkansas is that marital property is to be divided at the time of the entry of the divorce decree, and the date of the entry of the divorce decree is the correct date to be used for valuation of marital property. *Skokos v. Skokos,* 344 Ark. 420, 40 S.W.3d 768 (2001); *Allen, supra.* The trial court correctly ordered that the Morgan Keegan account be divided as of the date of divorce.

## II. *Equal Division of Morgan Keegan Account*

■ Deborah argues that not only is the Morgan Keegan account marital property, but also that she is entitled to all of that account due to her substantial contributions to Bill's businesses and to the marriage. In equity cases involving the division of property, this court affirms the trial court's findings unless they are clearly erroneous, which is clearly against the preponderance of the evidence. *Dennis v. Dennis,* 70 Ark. App. 13, 13 S.W.3d 909 (2000). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Farrell v. Farrell,* 365 Ark. 465, 231 S.W.3d 619 (2006). The trial court's findings on matters of credibility are given great weight, as the trial court is in the best position to observe the witnesses. *Dennis, supra.*

■ Deborah contends that as a consequence of the parties' agreement, she was denied her right to benefit from the substantial increase in Bill's assets. In sup-

port of this argument, she cites *Brown v. Brown,* 373 Ark. 333, 284 S.W.3d 17 (2008), and *Farrell, supra.* In *Brown,* the trial court considered the husband's interest in a nonmarital limited partnership in dividing marital property unequally, and our supreme court affirmed, holding that it was within a circuit court's discretion to consider potential opportunities for further acquisition of property in dividing marital assets. In *Brown,* our supreme court also followed the exception to the general rule that marital property excludes the increase in value of nonmarital property during the marriage that was set forth in *Farrell, supra.* That exception provides that "when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property, ... the presumption arises that such increase belongs to the marital estate." 365 Ark. at 475–76, 231 S.W.3d at 627.

Deborah argues that she worked with Bill for fifteen years and not only took care of him during his struggle with cancer, she also fronted his business activities, including Mountain Harbor Resort and his other properties; upgraded his marketing and advertising campaigns; helped develop the Harbor North and Self Creek projects; and remodeled and redecorated most of Bill's business properties. She also developed Turtle Cove Spa (which she kept as her own separate property after the divorce) as a component of Mountain Harbor Resort. She argues that Bill's financial position increased from under $3,000,000 in 1994 to over $16,000,000 in 2008, and that her contributions played an important role in the growth of Bill's assets.

This case is distinguishable from *Brown* and *Farrell* because in those cases, there was no antenuptial agreement, while there was such an agreement in this case. The

trial court determined that the agreement was valid, and neither party contests this finding. In that agreement, Deborah agreed that she would make no claim or receive any interest in any part of Bill's property except as set forth in the agreement, and she acknowledged that the agreement would cause her to receive less than she would under operation of law in the event of death or divorce. In contravention of the agreement, she is now trying to argue that she is due a part of the appreciation of Bill's nonmarital assets due to the work she provided for Bill's nonmarital properties. While the trial court noted in the divorce decree that Deborah was claiming that she should be awarded the entire Morgan Keegan account because of her work developing nonmarital properties owned by Bill, the trial court rejected this contention and divided the account equally. We cannot say that this decision is clearly erroneous.

### III. *Denial of Request for Attorney's Fees*

■■■ Arkansas Code Annotated section 9–12–309(a)(2) (Repl.2009) provides, "In the final decree of an action for absolute divorce, the court may award the wife or husband costs of court, a reasonable attorney's fee, and expert witness fees." A trial court has considerable discretion in awarding attorney's fees in a divorce case, and a decision on this matter will not be disturbed absent an abuse of discretion. *McKay, supra.* In determining whether to award attorney's fees, the trial court is required to consider the relative financial abilities of the parties. *McKay, supra.*

Deborah requested $18,280 in attorney's fees and $140 in costs, which the trial court denied. She now argues that denial was error because Bill was in a much better financial position than she. While it is true that Bill has considerably more assets than Deborah, she also has considerable assets of her own. The net worth of assets in her name at the time of the divorce was calculated to be $600,050. She also received over $500,000 of marital property from the divorce, as well as over $155,000 per year in alimony for five years after the divorce. We find no abuse of discretion in the trial court's decision that Deborah bear her own attorney's fees and costs.

Affirmed on direct appeal and cross-appeal.

PITTMAN and GRUBER, JJ., agree.