SLIP OPINION

2015 Ark. App. 215

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–902

| | |
|---|---|
| | Opinion Delivered APRIL 1, 2015 |
| WILLIAM PAUL BARRON, JR.<br>APPELLANT | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. DR–13–409] |
| V. | |
| | HONORABLE JOHN R. PUTMAN, JUDGE |
| MENDY LYNN BARRON<br>APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

This is an appeal between divorced parties, appellant William Paul Barron, Jr., and appellee Mendy Lynn Barron. William contends that the trial court clearly erred in not finding the value of three financial accounts to be his sole nonmarital property, and alternatively, in not unevenly dividing the financial accounts in his favor. Mendy argues that the trial court did not clearly err on either point, and she also contends that William failed to appeal the amended divorce decree, depriving our court of jurisdiction to hear this appeal. We hold that William timely and properly appealed the trial court's July 2014 divorce decree, reaching the merits. After de novo review, we affirm.

The parties were married on December 31, 2009, separated in August 2013, and their divorce was granted by a decree filed in Boone County Circuit Court in July 2014. There were no children born of the marriage, and there was no marital real property to be divided,

but there was personal property and responsibility for debt to be decided by the trial court. After a full hearing, the trial court evenly divided a multitude of items, which included several vehicles, a motorcycle and trailer, a storage shed, appliances, furniture, collector coins, and a safe. Certain items were deemed owned pre-maritally or deemed gifts to the respective parties. William was found to be responsible for over $8,700 of Mendy's medical debts, directly attributable to his attack on her with an aluminum bat subsequent to their separation. Other debt related to William's cell phone and associated equipment was assigned to William.

The primary issue at the bench trial was the character and ownership of the following financial accounts, all titled in both Mendy and William Barron's names: a savings account at Community First Bank, a checking account at Community First Bank, a savings account at First Federal Bank, and an investment account at Raymond James Financial Services, Inc. The Community First Bank accounts held approximately $186,000, although Mendy withdrew approximately $50,000 during the process of separating from William. The First Federal Bank account held approximately $80,000 during the marriage, but $50,000 of that went into the Raymond James Financial Services, Inc. account. The remainder of the First Federal Bank account was spent prior to the divorce becoming final, leaving only $10.13 at the time of the divorce. Thus, the accounts of primary interest were the checking and savings accounts at Community First Bank and the Raymond James investment account.

There was no dispute that the source of the bulk of the funds in these three accounts was from William's mother or from the proceeds of life-insurance policies cashed in by William. Nonetheless, the money was placed, during the marriage, in the above-noted

accounts in the names of both parties, giving rise to the presumption that there was a gift from William to Mendy.

William did not testify during this divorce hearing; the only witnesses were Mendy and her daughter. Mendy testified to the existence of these financial accounts, their being titled in both her and William's name with right of survivorship, their mutual access to and use of the money in these accounts, and the fact that they both treated the accounts as "our money."

In a posttrial brief, Mendy requested the trial court to deem the financial accounts as marital and divide them evenly, where the evidence created the presumption that they were marital, and William failed to rebut that presumption in any manner and certainly not by clear and convincing evidence. In his posttrial brief, William requested that these accounts be deemed his separate nonmarital property because of the source of the funds, or in the alternative, that the trial court find that equity required that the accounts be unevenly divided in his favor.

The judge found that William failed to present clear and convincing evidence to rebut the presumption that the joint accounts used during the marriage were marital. Mendy was required to remit $25,000 to William as a consequence of her having taken $50,000 out of the financial accounts prior to the divorce to reimburse William for his marital half of those funds. In summary, the Community First Bank accounts, the minimal funds in the First Federal Bank account, and the value of the Raymond James investment account were divided evenly. The trial court rejected William's request to unequally divide the accounts. This appeal followed.

First, we address Mendy's allegation that we lack appellate jurisdiction to hear this appeal. We disagree. Mendy asserts that William filed a proper and timely notice of appeal only from the July 2014 decree, not the subsequent amended decree entered in September 2014. An appeal may be taken from a final judgment or decree. Ark. R. App. P.–Civ. 2(a). The July 2014 decree was final, as it adjudicated all the issues in this divorce litigation; this decree is detailed and is five pages long. William contends that the September amended decree is identical to the July 2014 decree, and thus it was unnecessary to file a second notice of appeal. These decrees do appear to be identical, with the exception that a minor clerical error was corrected. This correction changed one sentence where a reference to "Ms." Barron was changed to "Mr." Barron, an obvious scrivener's error. We hold that our court is properly reviewing the July 2014 decree, which was properly perfected by a timely, specific notice of appeal.

Moving to the merits, William first contends that the trial court clearly erred in deeming the Community First Bank accounts and the Raymond James investment account to be marital property. We disagree that William has shown clear error.

In reviewing the division of property in domestic-relations appeals, our court reviews the evidence de novo, but we do not reverse a finding of fact by the trial court unless that finding is clearly erroneous. *Carroll v. Carroll*, 2011 Ark. App. 356, 384 S.W.3d 50. Division of property at the time of divorce is governed by Arkansas Code Annotated section 9-12-315 (Repl. 2009), and it requires that all marital property be divided evenly unless the trial court finds such a division to be inequitable. There is a presumption that all property acquired

4

during the marriage is marital property, subject to certain statutory exceptions. *McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843 (1999). Where property is placed in the names of persons who are husband and wife without specifying the manner in which they take, there is a presumption that they own the property as tenants by the entirety, and clear and convincing evidence is required to overcome that presumption. *Bradford v. Bradford*, 2013 Ark. App. 615. Clear and convincing evidence is evidence by a credible witness whose memory of facts is distinct, whose narration of the details is exact and in due order, and whose testimony is so clear, direct, weighty, and convincing as to enable the fact-finder to come to a clear conviction without hesitance of the truth of the facts related. *Id.* The rights of the parties under a tenancy by the entirety in an account is a question of law. *Id.* The fact that consideration given for property taken in the two names belonged to only one spouse is of little, if any, significance where that spouse is responsible for the property being taken in both names, as the presumption is that there was a gift of an interest. *Id.* The tracing of money or property into different forms is not to be considered an end in itself, and the fact that a spouse made contributions to certain property does not necessarily require recognizing those contributions in the property division upon divorce. *Id.; see also Canady v. Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986).

William's contention is that, although the financial accounts were undoubtedly held in the parties' joint names during the marriage, making them presumptively marital, there was undisputed tracing of the source of those funds such that he provided clear and convincing evidence to rebut the presumption that a gift was made to Mendy. William concedes that he

did not testify as to the ownership and character of these accounts, but he argues that Mendy's testimony showed that this money was intended for his use and not hers. We hold that the trial court did not clearly err in finding that William failed to rebut the presumption that these accounts were marital.

Mendy's testimony confirmed that these financial accounts were titled in both of their names as joint tenants with the right of survivorship, that the source of the funds was from William's mother or from life-insurance policies he cashed in, and that both parties had access to and used what they both called "our money." Mendy stated that she had a debit card that she used for the Community First Bank checking account. She took out substantial funds from the Community First Bank savings account. She said that they used the funds in the First Federal Bank account to establish the investment account in the spring of 2013 with both of their names on it, and they used the remaining funds from the First Federal Bank account to buy a car and take a vacation. The source of the funds is of minimal value here because the moneys were converted into marital funds by virtue of their placement in joint accounts and by virtue of their joint access and usage. *See Barnes v. Barnes*, 2010 Ark. App. 821, 378 S.W.3d 766; *Singleton v. Singleton*, 99 Ark. App. 371, 260 S.W.3d 756 (2007); *Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000). We affirm on this point as not clearly erroneous.

William's alternative argument on appeal is that, if these accounts were marital, then the trial court clearly erred in not making a division of these assets unequally in his favor. We hold that the trial court did not clearly err.

In response to William's request of unequal division, the trial court's decree noted that it was "troubling" and "doesn't seem quite fair" that Mendy would receive half of the value of those accounts "having contributed little to the accumulation in the accounts. Be that as it may, the court can't just do as it pleases." The trial court's decree recited the applicable statute, Arkansas Code Annotated section 9-12-315(a)(1)(A) and (B), listing factors to consider if an even division is not found to be equitable and the requirement on a trial court to state the basis and reasons to justify any unequal division. By statute, the trial court is to consider, if it finds an even division inequitable, the length of the marriage; the age, health, and station in life of the parties; the occupation of the parties; the amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and the opportunity for each for further acquisition of capital assets and income; contribution of each party in the acquisition, preservation, or appreciation of marital property, including services as a homemaker; and the federal income tax consequences of the court's division of property. The trial court's order then recited:

> Thus, the law requires that the court justify any unequal distribution of marital property. In this case, other than the length of the marriage and the source of the majority of the contributions to the accounts, the court was presented with insufficient evidence to apply and address the statutory factors set out in Arkansas Code Annotated section 9-12-315. It may have been that there was no additional evidence which would have changed the equity of property division. Consequently, the law requires that the accounts be distributed one-half (1/2) to each party.

Here, William simply failed in his burden to present sufficient evidence to divide the marital accounts in any other manner than one-half to each party. The overriding purpose of section 9-12-315 is to enable the trial court to make a division of property that is fair and

equitable under the circumstances; mathematical precision is not required. *Copeland v. Copeland*, 84 Ark. App. 303, 139 S.W.3d 145 (2003). William contends that the trial court required a heightened burden of proof—clear and convincing evidence—on the issue of unequal distribution, but this is not borne out by the trial court's final decree. William also notes that the list of statutory factors is not exhaustive nor is proof of every statutory factor required. *Id.* In this case, the two factors that supported William's request did not convince the trial court that equity required an unequal division or that it would be justifiable on this record. We hold that William has failed to demonstrate that the trial court clearly erred.

We affirm.

VIRDEN and HARRISON, JJ., agree.

*Ethredge & Copeland, P.A.*, by: *David L. Ethredge*, for appellant.

*James E. Goldie*, for appellee.