....
17. The parties each hereby acknowledge that they have been represented by counsel in this matter and that they have each been advised that this agreement, upon approval by the court, will constitute a final agreement of the parties which cannot be reviewed, amended or changed by either party. This result is intended by both parties, so that this matter cannot be subsequently changed by the other. The parties further acknowledge that they are aware of, and have been advised of the Arkansas law with respect to division of property, spousal support (alimony) and other issues related to the property of the parties. The parties each acknowledge that in the event this matter were decided by this court, they may receive more, or less than what is provided under this agreement. The parties notwithstanding accept the terms of this agreement and voluntarily waive their right to have these matters decided by this court.
....
21. The parties have read and understand the terms and conditions of this Agreement, having consulted with Counsel, and they have executed same as their free and voluntary act.
Both parties and each of their attorneys signed the agreement.
In anticipation of his retirement in April 2014, Allen presented Lynn a "Military Retirement Pay Division Order" (MRPDO) in December 2013. Lynn advised Allen in March 2014 that she would not sign the proposed order because it did not provide her a full 50% of his anticipated monthly retirement benefit. When Allen began to draw his retirement pay, he commenced paying Lynn her half, valued as of the date of the divorce and not including the additional portion earned in the five years after the divorce.
In October 2014, Allen filed a Motion to Enforce Property Settlement Agreement, asserting that he was paying Lynn her half of his retirement in accordance with their property settlement agreement but that Lynn would not sign the order effecting the division. His motion asked that the trial court approve and enter his proposed MRPDO and that he be awarded his attorney fees and costs for having to file this motion. Lynn filed a response in October 2014 generally denying Allen's allegations but asking for the entry of an order that granted her the benefits to which she was entitled.
In August 2015, Lynn filed an Amended Counter Motion in which she reiterated her desire for a "military qualifying court order." Lynn also requested that she be reimbursed by Allen for her payment of $7,476 in health-insurance premiums she incurred between May 2009 and May 2012, as provided in paragraph 14 of their settlement agreement. Allen responded to Lynn's filing by reiterating his request for approval of the MRPDO and stating that Lynn had never notified him that she was paying any health insurance premiums, that she had never made a demand for those premium reimbursements until now, and that she had not provided any documentation to support that claim.
A hearing was conducted in November 2016. Allen's position was that their property settlement was clear and unambiguous and entitled Lynn to half of his military retirement account, "as of the date of the divorce." Allen contended that this meant Lynn was to receive her half of that amount that accrued during the marriage *340 and not what had accrued after the divorce was final. Lynn contended that the provision was ambiguous and that she thought it meant that she was entitled to half of the entirety of Allen's military retirement, whenever he began to draw it.
Allen testified that he became a member of the Arkansas Army National Guard early in their marriage and that he served five additional years after their divorce was final. Allen also testified that he had a thrift savings plan through the military. Allen testified that this savings plan was not part of his retirement but was a savings account. Allen hired Mark Sullivan, an expert in military-retirement benefits and a lawyer, to calculate what Lynn was entitled to, and Allen remitted that amount to her on a monthly basis.
Mark Sullivan, the aforementioned expert, testified that he is an attorney licensed in Ohio and North Carolina since the 1970s, a retired Army Reserve JAG Colonel, and a board-certified family lawyer since 1989.[1] Mr. Sullivan is the author of a book on military divorce covering military retirement and pensions. Mr. Sullivan calculated what Lynn's 50% share was, considering that they agreed her half was to be determined "as of the date of the divorce." He testified that "it's clear that what we're doing is talking about the monthly paycheck an individual receives[.]" Mr. Sullivan stated that if Lynn was to receive half of the entirety of Allen's military retirement, then the settlement provision would not have included the qualifying words "as of the date of the divorce." He testified, "If you add the modifier, as of the date of the divorce, those words have to have meaning and that means with the snapshot on the date of the divorce." He explained his method of calculation, including cost-of-living increases since 2009, to be fair to Lynn and ensuring that she would receive those increases in the future. Mr. Sullivan stated that a thrift savings plan was an optional savings account akin to a 401(k) that was funded solely by the military person's contributions.
Lynn did not take issue with Mr. Sullivan's method of calculation but instead believed that the settlement agreement meant that no calculations were required-she was simply entitled to half of whatever Allen would draw on a monthly basis. Lynn said that this was what she understood that they agreed to, although she admitted that she had been represented by counsel and that she had consulted with him when she entered the settlement agreement. Lynn testified that she did not have counsel's advice on what all this meant "because I don't feel like I was completely informed of that or I wouldn't be sitting here today." When asked why the phrase "as of the date of divorce" was used, she replied, "I can't answer why it reads like that." Lynn admitted that she had not read this settlement agreement word for word but instead had asked her attorney if she got what she asked for, and he had said yes.
During the hearing, Lynn's attorney submitted Defense Exhibit No. 1 without objection, substantiating the health-insurance premiums paid in the three years following the parties' divorce for which she was seeking reimbursement.
The trial court took the matter under advisement. On December 2, 2016, the trial court issued a letter opinion and found that
1. The parties' settlement agreement paragraph 10, concerning division of Allen's military retirement, was not ambiguous.
*341 2. Mr. Sullivan's calculations were correct.
3. Lynn provided proof to substantiate her COBRA payments in the amount of $5,210.55.
4. Allen was "entitled to his fees and costs for the filing and prosecution of this motion."
Lynn's attorney sent letters objecting to the proposed precedent sent by Allen's attorney, asserting for the first time that Lynn was entitled to half of Allen's thrift savings plan. The trial court did not respond to those letters. The trial court entered an order on February 23, 2017, reflecting the findings made in its December 2016 letter opinion. Lynn filed a timely notice of appeal.
Lynn first argues on appeal that paragraph 10 of their property-settlement agreement regarding the division of Allen's military retirement is ambiguous and that the trial court erred in finding the provision unambiguous. We disagree with Lynn on this point.
The provision at issue states:
10. The Wife shall receive 50% of Husband's military retirement account, as of the date of the divorce. Husband's attorney shall prepare a Qualified Domestic Relations Order to divide said retirement account. Further, Husband shall sign any documents necessary to effect the division of the account specified herein.
Lynn's half of Allen's military retirement was to be determined "as of the date of the divorce." In other words, Lynn's interest would be half that portion accrued up to the date that their divorce was final, not in any portion accrued thereafter. We must give effect to the plain language used, and there is no other reasonable interpretation. To interpret this provision as Lynn asserts would negate any meaning to the qualifying words "as of the date of the divorce."
Military pensions are generally divided proportionately to the number of years of marriage coinciding with the pensioner's military service. See , e.g. , Barnes v. Barnes , 2010 Ark. App. 821, 378 S.W.3d 766 ; Thomas v. Thomas , 68 Ark. App. 196, 4 S.W.3d 517 (1999) ; Cherry v. Cherry , 55 Ark. App. 178, 934 S.W.2d 936 (1996). When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. Artman v. Hoy , 370 Ark. 131, 257 S.W.3d 864 (2007) ; Oliver v. Oliver , 70 Ark. App. 403, 19 S.W.3d 630, 633 (2000). The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. Buckingham v. Gochnauer , 2017 Ark. App. 660, 536 S.W.3d 155. Lynn was represented by counsel, admittedly did not read the settlement agreement word for word, and acknowledged that this agreement was final and binding. "The parties here were represented by able counsel and entered into the contract voluntarily, so it must be enforced." Moody v. Moody , 2017 Ark. App. 582, at 9, 533 S.W.3d 152, 159.
The trial court conducted a hearing on the parties' motions before making its decision, but ambiguity does not exist as a matter of law because one party says it does. See , e.g. , Oliver, supra . We cannot say that the trial court erred in finding that this provision was unambiguous in setting the value of Lynn's 50% "as of the date of the divorce," which was in 2009 and not in 2014. See Collins v. Collins , 2015 Ark. App. 525, 471 S.W.3d 665.
*342 Lynn adds an argument in this point on appeal that she was entitled to half of Allen's thrift savings plan because it was equivalent to a 401(k) and part of the "military retirement account" specified in paragraph 10. We disagree. The parties framed this litigation as relating solely to the correct percentage of Allen's monthly military retirement paycheck that should be entered in the MRPDO. Although there was testimony elicited about the thrift savings plan, there was no request made during the hearing for half of this individual financial account. Moreover, on de novo review, it is clear that the thrift savings plan was an "individual financial account" that would remain Allen's sole property pursuant to paragraph 9 of the property-settlement agreement. See Franks v. Franks , 2018 Ark. App. 266, 548 S.W.3d 871.
Lynn's second point on appeal asserts that the trial court abused its discretion in finding that Allen was entitled to attorney fees and costs for his pursuit of his motion to enforce the property-settlement agreement. Lynn contends primarily that she should have prevailed on her construction of paragraph 10 and that, therefore, the trial court erred in its determination of the results of this litigation in deciding that Allen was entitled to attorney fees. We need not address this issue.
First, we are upholding the trial court's decision with regard to Lynn's first point on appeal. Second, Lynn has filed a separate appeal relating solely to the trial court's subsequent order awarding attorney fees. Any arguments related thereto will be resolved in Lynn's separate appeal.
Affirmed.
Virden, J., agrees.
Harrison, J., concurs.
This case is about paragraph 10 in the divorced couple's eight-years-old property-settlement agreement. The paragraph sought to resolve rights to Col. Hargis's military-retirement benefits. Here is the disputed paragraph:
The wife shall receive 50% of husband's military retirement account as of the date of divorce. Husband's attorney shall prepare a Qualified Domestic Relations Order to divide said retirement account. Further, husband shall sign any documents necessary to effect the division of account specified herein.
The parties focused on the first sentence. In that sentence the phrase "as of the date of the divorce" is unambiguous. So we all agree that the contract is clear enough as to when Ms. Hargis's percentage of Col. Hargis's military-retirement money had to be valued-"the date of divorce," 28 May 2009.
But the term (or phrase) "50% of husband's military retirement account" in paragraph 10 is ambiguous because there was no single retirement "account" when the parties divorced years ago. The case's course persuades me that the parties held competing interpretations of what a material term in their agreement meant when it came time to put it to work. Therefore, I respectfully disagree with the circuit court's and my colleagues' conclusion that the term "50% of husband's military retirement account" is unambiguous. This difference of opinion does not ultimately matter, however, because I agree that the circuit court did not make a reversible error by ruling that Lynn Hargis should receive 37.5 percent of Colonel Hargis's "military retired pay."
The Testimony (Summarized) and the Court's Decision
There was no single "military retirement account" when the parties divorced. Col.
*343 Hargis's expert witness, Mark Sullivan, a colonel, Judge Advocate General's Corps, U.S. Army Reserve (Retired), testified about the colonel's "military pension" and "retired payment" and "military retired pay"-not an "account." And when cross-examined by Ms. Hargis's counsel, Col. Sullivan agreed that "military retired pay is not an account." The circuit court later noted that the parties' dispute was "artfully described as a federal government military entitlement." This case did not high center on a savings or checking account, a 401(k) account, or a CD. The tussle concerned pension and annuity benefits derived from Col. Hargis's military service, benefits that accrued during the marriage. In context, paragraph 10's reference to an "account" is inaccurate; and the inaccuracy mattered.
Back to Col. Hargis's expert, who said this about the entitlement calculation:
Defined benefit plan, Your Honor, which is Title X, or the qualified plan submitted to the IRS, which is a private employer, or the State of Arkansas, for that matter, sets out what the formula is that is used to determine the retire pay of an individual. Typically it is an amount of money times a percentage equals the monthly retired pay.
Sullivan further agreed that Col. Hargis's 403(b) contributions, which was also called a thrift savings plan, "is a defined contribution plan somewhat akin to a 401k plan in the private sector[.]" The thrift plan's value vests "when it is placed in there," and death terminates monthly military-retirement payments unless a retiree chooses a survivor-benefit annuity for a former spouse.
On redirect examination, Sullivan said it was unusual to have a thrift savings plan because a soldier must voluntarily choose to contribute a portion of his or her salary to the plan. He agreed that those "who are uninformed" may call a retirement entitlement "an account." The colonel also explained that "retire pay" is different than a "survivor benefit plan"-the latter is an annuity that one must "elect to pay for in order to get it[.]" According to his expert witness, Col. Hargis chose a survivor-benefit plan for Ms. Hargis while they were married. In the expert's view, because the divorce decree and property-settlement agreement did not state that Col. Hargis "shall immediately elect former spouse coverage for the survivor benefit plan," Ms. Hargis's interest in the survivor-benefit plan had terminated. Col. Hargis's current wife therefore became the sole beneficiary of the survivor-benefit plan. "General recognition of retirement benefits [in a property-settlement agreement] won't effectuate the Survivor Benefit Plan. It has to be a specific reference to the SBP," said Sullivan. This opinion on military-retirement law further shows how the scope of the term "50% of husband's military retirement account" in paragraph 10 is open to different meanings.
Regarding the thrift savings plan, which was not specifically identified in the settlement agreement, Col. Hargis explained that he did have a 403(b) thrift savings plan, which was "for all government employees." He said the military did not match his voluntary contributions, and the thrift savings plan was "just like" the APERS [Arkansas Public Employees Retirement System] plan that Ms. Hargis had. Col. Hargis said that he did not consider his thrift plan to be "military retirement." Ms. Hargis, however, argued that the 403(b) contributions was an available source of money to be aggregated and divided under paragraph 10. In a letter filed after the hearing, Ms. Hargis's counsel argued for part of Col. Hargis's 403(b) thrift savings contributions:
*344 Mr. Hargis admitted on cross-examination that he, in fact, had a Thrift Savings Plan throughout the term of his military service and that he has paid Mrs. Hargis nothing from that account. Although we don't know how much was in that plan as of the date of the divorce, the Property Settlement Agreement clearly awards Ms. Hargis half of whatever the military says it is.
For his part, Col. Hargis responded by letter that "the testimony at trial was that the Thrift Savings Account was not part of military retirement but rather a self-funded financial investment account." The same letter then referenced the contract and argued that paragraph 9, not paragraph 10, captured the thrift savings plan. The letters show the (reasonable) differences of opinion that each party held about paragraph 10.
As the majority notes, Ms. Hargis said that in all negotiations leading up to the divorce and property-settlement agreement, Col. Hargis had acknowledged her support and sacrifices, stating that she was "the perfect military wife" and that she would receive "half of his retirement" with no qualifiers. There was testimony that Ms. Hargis received prestigious awards during her husband's deployments related to the support she provided military personnel. Patricia McClellan, the wife of General Roger McClellan, said she had known the couple for about 37 years and that Col. Hargis "made comments" "when the divorce started" that "Lynn would get half of his military pay and that she deserved it because she had supported him through his military career."
Sullivan calculated Col. Hargis's "retired pay base"-as of the date of the divorce-as approximately $8,000. Sullivan also calculated a "retired pay multiplier" based on Col. Hargis's rank, and years of service at the time of divorce. Sullivan then multiplied these numbers and calculated the hypothetical "retired pay" that Ms. Hargis would have received had Col. Hargis retired the day they were divorced. Ms. Hargis did not put on any evidence of what Col. Hargis's military retired pay would have been on the "date of divorce." Col. Sullivan's final opinion was that Ms. Hargis should receive "a check for 37.5% of [Col. Hargis's] retired pay."
The parties rested their cases after a one-day hearing. In time, and after having received significant argument in letter form from both parties after the hearing, the circuit court issued an order and ruled for Col. Hargis. Ms. Hargis appealed.
The Circuit Court's Conclusion Was Not Clearly Erroneous
To decide this case, we should be asking whether the circuit court's decision that Ms. Hargis be paid 37.5 percent of Col. Hargis's retired pay was clearly erroneous. The course in circuit court was much more bench trial than summary judgment. (The difference has important broader implications, but there is no need to develop the point more today.) Compare Prochazka v. Bee-Three Dev., LLC , 2015 Ark. App. 384, at 4, 466 S.W.3d 448, 452 (whether contract was ambiguous was decided by summary judgment based on the contract's four corners). Because the phrase "50% of husband's military retirement account" was reasonably open to competing interpretations, a contractual ambiguity arose. See, e.g. , Restatement (Second) of Contracts § 212 cmts. d, e (Am. Law Inst. 1981). Consequently, the court received evidence outside the contract itself to help it decide how to resolve the meaning and scope of the disputed material term. See, e.g. , John Wesley Hall, 3 TRIAL HANDBOOK FOR ARKANSAS LAWYERS § 57:15 (Thomson Reuters 2017-18 ed.); see also Rainey v. Travis , 312 Ark. 460, 463, 850 S.W.2d 839, 840 (1993)
*345 (noting the general rule that "it is only when an ambiguity exists in a contract that parol evidence is admissible") (internal citation omitted). The court did what it needed to do: act as trier-of-fact and decide the case.
No one has argued that the circuit court erred by convening the hearing and receiving evidence outside the four corners of the property-settlement agreement. No one has complained that the parties' dispute should have been decided "as a matter of law" by the court rather than as the fact-finder.
Having applied the standard of review we typically do when a circuit court decides a case while applying the facts to the law, I do not have a firm and definite belief that the court made a mistake when it decided the dispute the way that it did. There is support for Ms. Hargis's side, but the circuit court had to make credibility determinations, weigh the evidence, make inferences from the proof (some of which was murky), apply all it had learned to the contract, and decide the case. On this record, the court did not err by awarding Ms. Hargis 37.5 percent of Col. Hargis's military pension. I therefore join the majority's decision to affirm the circuit court's decision on what Ms. Hargis is owed under paragraph 10 of the property-settlement agreement.
On the attorney-fee issue that the majority mentions, I agree that the fee dispute will be fully addressed by a separate opinion.

The parties stipulated that Mr. Sullivan is an expert.