SLIP OPINION



Cite as 2014 Ark. App. 111

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-13-465

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** February 12, 2014 |
| ERIC LEROY MASSEY | | APPEAL FROM THE FAULKNER |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 23-DR-11-402] |
| V. | | |
| | | HONORABLE DAVID L. |
| | | REYNOLDS, JUDGE |
| KRISTI MICHELLE MASSEY | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

In this domestic relations case, the Faulkner County Circuit Court issued a decree of divorce on September 21, 2012, that awarded appellee Kristi Michelle Massey a divorce from appellant Eric Leroy Massey. The trial court found that certain real and personal property was marital property and divided the property equally between the parties. Eric now appeals, arguing that the trial court clearly erred in finding that this property was marital property, and in awarding Kristi a one-half interest in the property. Eric contends that, although he acquired each of these items of property during the parties' marriage, they were gifts to him from his parents and therefore constituted his nonmarital property. We disagree and affirm.

Pursuant to Arkansas Code Annotated section 9-12-315(a)(1)(A) (Repl. 2009), all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable. "Marital property" is defined as all property acquired by either

spouse subsequent to the marriage, subject to certain exceptions including property acquired by gift. Ark. Code Ann. § 9-12-315(b)(1) (Repl. 2009). We have defined a gift as a voluntary transfer of property, without consideration, to another. *Scott v. Scott*, 86 Ark. App. 120, 161 S.W.3d 307 (2004). There is a presumption that all property acquired during a marriage is marital property. *Baker v. Baker*, 2013 Ark. App. 543, __ S.W.3d __.

We review division-of-marital-property cases de novo. *McClure v. Schollmier-McClure*, 2011 Ark. App. 681. However, a trial court's findings of fact with respect to division of property will be affirmed unless clearly erroneous or clearly against the preponderance of the evidence. *Barnes v. Barnes*, 2010 Ark. App. 821, 378 S.W.3d 766. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id*.

The assets at issue in this appeal are a 357-acre tract of real property located in Searcy County and Eric's thirty-percent ownership interest in a limited liability company. The circuit court found that the real property and Eric's interest in the limited liability company were marital property and divided the property equally.

### I. *The 357 Acres of Farm Land—The Massey Farm*

Sydney and Jessie Horton owned 357 acres of farm land in Searcy County. Eric's father, Roy Massey, owned farm land that was adjacent to the Horton farm. Roy Massey leased the Horton farm for eight years and took care of the Hortons' cattle. Roy learned that the Hortons would be willing to sell their farm and cattle. Roy testified that he negotiated the purchase price with the Hortons. In July 2000, Eric executed an "Offer and Acceptance"

to purchase the Hortons' farm. Eric applied for financing with First Community Bank and filled out a Residential Loan Application. The loan application provided that the purpose of the loan was "to purchase" 357 acres of farm land. First Community Bank prepared a promissory note in the amount of $185,000. The borrower/consumer on the note was Eric. The promissory note stated on its face that the purpose of the note was for the "consumer: to purchase farm land." The promissory note was guaranteed by Eric's father, Roy Massey. First Community Bank also prepared a mortgage as collateral for the promissory note. The mortgage described the 357 acres of real property as collateral for the promissory note, and the mortgagors were Eric and Kristi Massey. This mortgage was executed by each party and contained a provision that provided in pertinent part: "[the mortgagor] is or will be lawfully seized of the estate conveyed by this security instrument and has the right to grant, bargain, convey, sell, and mortgage the property."

On October 30, 2000, the purchase of the Hortons' farm was completed. A warranty deed was duly executed and filed for record and the appropriate real estate tax stamps were affixed thereto. The grantors of the deed were "Sydney and Jessie Horton" and the grantee of the deed was "Eric Massey." (Hereinafter, the 357-acre real property will be referred to as the "Massey Farm.")[1]

In 2001, Eric and Roy borrowed an additional $40,000 to construct a cabin on the farm. Eric and Roy were co-makers of this note. The credit proposal indicates that the

---

[1]On July 23, 2010, the loan was renewed by First Community Bank, and the purpose of the renewal loan indicates that the "Purpose of Renewal: Purchase farm land and convert construction loan to perm[anent]."

purpose of this loan was for the "construction of cabin on farm property—2nd home." Kristi and Eric executed a mortgage on the cabin in favor of First Community Bank as collateral for the loan, and this mortgage also included the same provision as the Massey Farm mortgage stating that the mortgagors were lawfully seized of the property. The parties also granted a second mortgage on the Massey Farm as additional collateral.

Roy Massey testified that it was his intent that the acquisition of the Massey Farm was a gift to his son Eric as part of his (Roy's) estate planning. Roy testified that he (Roy) had made all the payments toward the loans associated with the Massey Farm and that he paid all the taxes and utilities. Roy testified that Eric never made a payment on the loans. Roy testified that "it was certainly a gift" and that he "put the deal in Eric's name" because he wanted the Massey Farm to belong exclusively to Eric.

John Adams is the banker with First Community Bank who handled Eric's original loan for the purchase of the Massey Farm and the second loan for the construction of the cabin. Mr. Adams testified that Roy Massey approached him and stated that he wished to purchase the property for Eric. Roy instructed Mr. Adams to put the loan in Eric's name, with Roy as guarantor, and to put the deed in Eric's name only. Mr. Adams indicated that he asked both Eric and Kristi to sign the mortgages on the notes because they were a married couple and the bank was protecting its interest against potential dowery rights. Mr. Adams testified that all the loan payments had been made by Roy Massey, and that there remained an outstanding balance.

Eric testified that the Massey Farm was given to him by his father. He stated that he constructed the cabin on the property and worked on the farm, and that his father took care of all his financial needs, including making the loan payments. Eric acknowledged that the parties' joint tax returns included mortgage-interest deductions that were derived from payments on the First Community Bank loans, and that the joint tax returns showed income received from the sale of timber and cattle from the farm. However, Eric maintained that he had never sold any cattle and that the income from the sale of cattle was also a gift from his father.

Kristi testified that she erroneously thought that, at the time the Massey Farm was purchased, her name was on the deed. She stated that she and Eric bought the farm to build a house on and retire. Kristi stated that the parties' joint tax returns reflected income from the sale of cattle as well as timber from the Massey Farm. She assumed that the payments on the notes were being covered by the annual sale of cattle by Eric and his father.

Eric argues on appeal that the trial court erred in concluding that the Massey Farm was marital property. He argues that the farm was a gift to him from his father. We, however, conclude that the trial court's finding that the Massey Farm was marital property was not clearly erroneous.

Although there was testimony by Eric and his father purporting to demonstrate that the Massey Farm was a gift, we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *See*

 

*Blalock v. Blalock*, 2013 Ark. App. 659. There was considerable evidence, relied on by the trial court, tending to show that the farm was not a gift.

The record shows that Eric personally signed an offer and acceptance to buy the farm property from the Hortons. First Community Bank subsequently prepared a credit proposal on Eric. When Eric signed the residential loan application, it provided that the purpose of the loan was "to purchase" the farm. Eric signed the promissory note in favor of First Community Bank, and the note described the purpose of the loan as "consumer: to purchase farm land." Both Eric and Kristi signed a mortgage on the property, and the mortgage provided that the mortgagor "is or will be lawfully seized of the estate conveyed by this security instrument and has the right to grant, bargain, convey, sell, and mortgage the property." The joint tax returns showed that the note payments made to First Community Bank produced mortgage deductions that were claimed by Eric and Kristi. Finally, there was evidence from which the trial court could conclude that Eric and his father sold calves and timber off the land to contribute to the note payments. On the entire evidence, we are not left with a definite and firm conviction that the trial court made a mistake in finding that the Massey Farm was not a gift as Eric claimed, but instead constituted marital property. Accordingly, the trial court did not err.

## II. *ERAK, LLC*

The other asset at issue in this case is a company known as ERAK, LLC. In September 2008 (during the marriage), Roy Massey and Eric Massey purchased real property in Faulkner County for $250,000. The warranty deed conveying title on the Faulkner County property

shows the grantee to be "Roy Gene Massey and Eric Massey." In March 2009, Roy Massey, Sharon Massey (Eric's mother) and Eric Massey formed a limited liability company called ERAK, LLC. Roy owned thirty-five percent, Sharon owned thirty-five percent, and Eric owned thirty percent. The Faulkner County property was transferred from Roy Massey and Eric Massey to ERAK, LLC, for the purpose of constructing an apartment complex. In order to develop the property, Roy and Sharon Massey, as members of ERAK, LLC, and as individuals, secured $926,400 in financing. As of June 16, 2011, the balance sheet of ERAK, LLC, showed the net worth of the company to be $251,414.09.

Both of Eric's parents testified that Eric's thirty-percent interest in ERAK, LLC, was a gift from them. Although Eric's name was on the deed to the real property transferred to the company, both Roy and Sharon testified that they had purchased that property. They said that Eric had made no financial contributions.

Both Eric and Kristi testified that Eric worked for eight months as a construction worker in the development of the apartments. Eric stated that he was the president of a company called E. Massey Construction. Kristi stated that Eric's job during that time was to build apartments for ERAK, LLC, that he was contributing sweat and labor to the venture, and that "it was an investment we were making."

Eric argues that the trial court erred in finding that his thirty-percent share of ERAK, LLC, was marital property. We affirm this finding as well. In concluding that Eric's interest in the LLC was not a gift, the trial court acknowledged the testimony that no marital funds had been expended in purchasing the real property placed into the company or the

construction of the apartments. However, the trial court relied on the undisputed testimony that Eric personally worked for eight months in constructing the apartment complex, which left Kristi with the burden of paying their marital expenses during that time through income from her employment. The trial court thus found that the business venture had been capitalized by the older Masseys, while Eric's contribution was his construction skill and labor, all of which were contributed during the marriage. The chief distinction between a gift and a sale is consideration. *Scott*, *supra*. Here, there was evidence that Eric's "sweat equity" was his consideration for his interest in the company. We hold that the trial court did not clearly err in determining that Eric gave consideration for his interest in ERAK, LLC, and therefore that this property was not a gift excepted from the parties' marital assets.

Affirmed.

PITTMAN and WALMSLEY, JJ., agree.

*William Z. White*, for appellant.

*Osment & Winningham, PLLC*, by: *Pamela S. Osment*; and *Cullen & Co., PLLC*, by: *Tim Cullen*, for appellee.