SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–13–506

| | |
|---|---|
| ELIZABETH ARNOULT<br><br>APPELLANT<br><br>V.<br><br>EDWARD ARNOULT<br><br>APPELLEE | **Opinion Delivered** February 12, 2014<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. DR–2011-861]<br><br>HONORABLE LARRY B. BOLING, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Elizabeth Arnoult challenges the Craighead County Circuit Court's order of distribution filed March 29, 2013, and amended on April 2, 2013, claiming that the order is inconsistent with the divorce decree. We affirm.

Appellant filed for divorce against appellee Edward Arnoult on September 29, 2011, seeking custody of their three minor children, possession of the marital residence, child support, spousal support, and settlement of their marital property rights and debts. Appellee responded on October 25, 2011, and, after a hearing, a decree of divorce was filed on October 18, 2012.

The decree provided in pertinent part that appellant was granted a divorce and custody of the minor children. Appellee was awarded supervised visitation and ordered to pay child support. The decree further provided that marital property included the parties'

marital residence, fifty-percent interest in Nettleton Auto Sales, Inc., fifty-percent interest in Nettleton Auto Sales Holding Company, LLC, and the funds from both Nettleton entities paid to either party since September 4, 2011. Marital debt included the first mortgage on the marital residence in the amount of $273,568.70 and a Liberty Bank line-of-credit mortgage lien in the amount of $452,160.05.

The circuit court ordered an equal division of the marital debt except for the Liberty Bank line of credit, which was allocated thirty-five percent to appellant and sixty-five percent to appellee for reasons stated within the decree. Absent a written agreement by the parties, the circuit court ordered that the marital residence, furniture, cars, and other miscellaneous items be sold at public auction, with the proceeds held subject to an order of distribution by the circuit court. Finally, the circuit court ordered that the parties sell their interest in both Nettleton entities to Michael Duncan, their business partner, for a total of $450,000 plus assumption by Mr. Duncan of all corporate debt except the Liberty Bank line of credit. This amount would be deposited in the circuit court's registry for distribution as well.

A notice of sale was filed December 18, 2012, setting a public auction for the marital residence on January 2, 2013. The sale notice provided that the property would be sold subject to a first mortgage in the approximate amount of $270,000 and a second mortgage in excess of $463,199, "which must be paid in order to obtain clear title to this property." Appellant bid and offered one dollar, and the property was sold to her for that price.

In a letter sent to all parties on March 6, 2013, the circuit judge opined that the marital residence was purchased for the principal and interest balance of the first and second

mortgages plus one dollar. The letter states, "[Appellant] assumed the first and second mortgage debts as the purchase price." The circuit judge calculated that the total purchase price of the marital home at the date of public sale was the sum of $273,568.70 plus interest from March 15, 2012, to date of sale, plus $452,160.55 plus interest from July 27, 2012, to date of sale. Thus, the letter opinion concluded that each party was entitled to half of $725,729.35 plus interest from the auction of the marital residence.

Further, the letter stated that appellee's responsibility for the first mortgage was $136,784.35 plus interest and his responsibility for the Liberty Bank mortgage was $293,904.42 plus interest, which represented sixty-five percent of the total Liberty Bank line of credit. The circuit court calculated that appellee's total mortgage obligation of $430,688.77 plus interest exceeded his one-half interest in the sale price of the home ($362,864.68) by $67,824.09 plus accrued interest, which amount appellee was ordered to pay appellant.

The March 29, 2013 order of distribution provides that the $450,000 from the sale of the Nettleton entities held in the registry of the court should be distributed as follows: one half to appellant ($225,000), plus several amounts for various items to which appellant was entitled, including the $67,824.09 owed by appellee, that totaled a distribution to appellant in the amount of $318,686.28. Appellee was awarded the remaining funds in the court's registry in the amount of $128,163.72.

An amended order of distribution was filed April 2, 2013, containing a Rule 54(b) certificate pursuant to Arkansas Rule of Civil Procedure 54(b) (2012). Appellant filed a

timely notice of appeal, claiming that the order of distribution is contrary to the law and evidence and to the judgments previously entered in the divorce decree, and this appeal followed.

We review division-of-marital-property cases de novo, but the trial court's findings of fact are affirmed unless they are clearly erroneous or against the preponderance of the evidence. *Colquitt v. Colquitt*, 2013 Ark. App 733, ___ S.W.3d ___. A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed; in reviewing the trial court's findings, the reviewing court gives due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded to each witness's testimony. *Id*. There is no presumption that an equal division of debts must occur. *Spears v. Spears*, 2013 Ark. App. 535. The key is that the division must be equitable. *Id*. We review the division of debt under the clearly erroneous standard. *Burns v. Burns*, 2012 Ark. App. 522.

Appellant argues that the divorce decree filed on October 18, 2012, was never appealed from and must control the property and debt division. She cites Arkansas Rule of Civil Procedure 60(a) (2012), and contends that the decree cannot be modified or vacated after ninety days, and an order of distribution that is inconsistent with the decree is impermissible under the rule.

Appellant submits that she bought the home subject to the indebtedness, i.e., in addition to the existing debt. She contends that the sale was "subject to" the existing mortgages, and did not constitute a written "assumption" of the entire mortgage

indebtedness. She argues that neither the Commissioner's Deed nor the order approving sale indicate that she assumed the mortgage indebtedness and that the circuit court's ruling that she did is inconsistent with the decree and contrary to Arkansas law. She cites *Hyde Wholesale Dry Goods Co. v. Edwards*, 255 Ark. 211, 500 S.W.2d 85 (1973), which held that a realty deed subject to a mortgage did not amount to a written assumption of debt by the grantee, where the conveyance was an ordinary warranty deed that made no mention of the mortgage indebtedness. She contends that, as in *Edwards*, she has never assumed the debt.

Appellant argues that it is particularly important that the divorce decree had already allocated the parties' respective share of the debts by finding that the Liberty Bank debt was marital and should be divided by allocating thirty-five percent to appellant and sixty-five percent to appellee. She contends, therefore, that appellee's half of the $450,000 from the sale of the Nettleton interests must be offset by his sixty-five percent share of the Liberty Bank debt, which was $304,853.65 at the date of the order of distribution. Thus, appellant claims that appellee should receive none of the money in the registry because his debt as determined by the circuit court under the divorce decree exceeded his share of the amount for the Liberty Bank debt. Otherwise, she complains, the decree's sixty-five-percent allocation to appellee is rendered meaningless.

Appellee contends that the divorce decree was not a final, appealable order because it did not make a final disposition regarding the proceeds from the sale of the parties' marital assets. We agree. The decree states, "The proceeds of the sale shall be held subject to an order of distribution of this Court." Therefore, because the decree did not end the litigation

5

or conclude the parties' property rights, it was not a final, appealable order. *Mason v. Mason*, 2012 Ark. App. 393. Thus, the circuit court maintained its authority to distribute the proceeds contained in the circuit court's registry.

We recognize that the circuit court is given broad powers to distribute both marital and nonmarital property to achieve an equitable division, and the overriding purpose of the property division statute is to enable the court to make a division that is fair and equitable. *E.g.*, *Frost v. Frost*, 2009 Ark. App. 290, 307 S.W.3d 41. Appellant's argument—that appellee should not have received any of the money from the distribution of the Nettleton proceeds because his share of the debt exceeded that amount as determined by the divorce decree—ignores appellant's continued possession of the marital residence. The circuit court did not overlook the decree's division of debt, but offset that debt against the amount to which appellee was entitled for his half of the value of the marital residence. The circuit court's consideration of appellant's windfall does not make the order of distribution clearly erroneous. *Burns*, *supra*.

Affirmed.

WOOD and BROWN, JJ., agree.

*Lyons & Cone, P.L.C.*, by: *Jim Lyons*; and *Bristow & Richardson*, by: *Melissa Richardson*, for appellant.

*Glenn Lovett, Jr. PLC*, by: *Glenn Lovett, Jr.*, for appellee.