2014 Ark. App. 174

**Elvin B. MARKS, Appellant**

v.

**Leona I. MARKS, Appellee.**

**No. CV–13–822.**

Court of Appeals of Arkansas.

March 12, 2014.

furniture; and in awarding her alimony. Finding no clear error, we affirm.

Elvin and Leona (now sixty-seven and sixty-eight years old, respectively) were married for a year or two in the 1970s, had one child (Laverne Antonette Marks), and divorced in December 1976. On January 26, 2010, the parties remarried. Six months later, in July 2010, |₂Elvin filed for divorce; however, the case was dismissed. In June 2011, Elvin filed another complaint for divorce, alleging that the parties separated on June 11, 2011. Leona answered, stating that Elvin had filed for divorce the year before, that the case had been dismissed because he failed to prove grounds, and that the June 2011 complaint also failed to state facts to support his claim. Leona also filed an amended answer, alleging that Elvin's income was considerably greater than hers, that Elvin had been providing financial support to her before and after their second marriage, that she could not survive without financial assistance from Elvin, and that she was entitled to spousal support.

On March 13, 2013, Elvin filed an amended complaint for divorce, alleging that the parties had been living separate and apart for more than eighteen months. He also alleged that Leona had possession of his nonmarital realty (5410 W. 11th Street) and personalty that should be restored to him. Leona answered the amended complaint, stating that she had been living in the house at 5410 W. 11th Street for many years, that she had an equitable interest in it, and that Elvin had given it to her. She also sought alimony.

At the divorce hearing, Elvin testified that he acquired the lot at 5410 W. 11th Street in 1989, he built a house on the property, and he allowed Leona and Laverne to move into the home in 1991. Elvin said that he lived in the home for a couple of months after he and Leona re-

Worsham Law Firm, P.A., Little Rock, by: Richard E. Worsham, for appellant.

The Austin Law Firm, PLLC, Little Rock, by: Latonya Laird Austin, for appellee.

LARRY D. VAUGHT, Judge.

On May 22, 2013, the Jefferson County Circuit Court entered a divorce decree that granted appellant Elvin Marks a divorce from appellee Leona Marks; declared that certain real and personal property was Elvin's nonmarital property and awarded it to him; awarded Leona Elvin's nonmarital real property located at 5410 W. 11th Street in Pine Bluff, Arkansas; found that Elvin gave Leona a .38 special revolver and oak bedroom furniture; and awarded Leona alimony in the amount of $250 a month for three years. For reversal, Elvin argues that the trial court erred in awarding Leona his nonmarital realty located at 5410 W. 11th Street; in finding that he had given Leona the firearm and

married in 2010. He added that he paid for the home's repairs and taxes and that Leona did not make any improvements to the home. He denied giving Leona the home or telling anyone that he was going to give it to her, stating that he allowed her to live there—rent free—because he was a good person. He also denied giving her the firearm and oak bedroom furniture. He said that he bought the furniture fifteen-to-twenty years ago and left it at the house and that he merely loaned the firearm to her. He told the trial court that he wanted the house, the gun, and the furniture returned to him.

Elvin, who is retired, also testified that his monthly income consisted of social-security benefits of $1414 and retirement benefits of $930. His monthly expenses were $2407. He added that he owned several other real properties, Entergy stock, an IRA account with approximately $120,000 in it, and a checking account with over $19,000 in it. He had no mortgage payments for his current home.

The parties' daughter, Laverne, who was thirty-nine years old at the time of the hearing, testified that her mother, Leona, had lived in the home at 5410 W. 11th Street for the past nineteen years and that she had made improvements to the home. Laverne said that she lived in the home approximately eight years and that she lived there after she had her son—the parties' grandson. Laverne said that her father, Elvin, had made comments that he would give Leona the home.

Leona told the trial court that she had lived at 5410 W. 11th Street for nineteen years. She said that she had made improvements to the home and had paid the utility bills. She contended that Elvin gave her the home. She testified about a discussion she had with Elvin about putting her name on the deed. She said he did not do so, stating, "I don't have to put your name [on the deed] because you can stay there until the day you die."

Leona, also retired, stated that her only source of income was monthly social-security benefits of $817 and that her expenses were $645. She said that she had not paid rent or a mortgage payment in over nineteen years and did not have the funds to do so. She said that she did not own any property or have bank or retirement accounts. She said that on behalf of her disabled adult son (who also lives with her) she received approximately $600 a month in social-security disability benefits. Finally, Leona testified that the bedroom furniture and firearm were gifts from Elvin.

Following the hearing, the trial court entered a decree of divorce and relevant to the issues on appeal, found that (1) the real property at 5410 W. 11th Street was Elvin's nonmarital property but, based on Arkansas Code Annotated section 9–12–315(a)(2), it should be distributed to Leona; (2) Elvin gave the bedroom furniture and firearm to Leona; and (3) Elvin was required to pay alimony to Leona in the amount of $250 per month for three years. This appeal followed.

■■■ Elvin's first point on appeal is that the trial court erred in awarding his separate nonmarital real property located at 5410 W. 11th Street to Leona. This court reviews division of marital property cases de novo. *Copeland v. Copeland*, 84 Ark.App. 303, 307, 139 S.W.3d 145, 148 (2003). The trial court has broad powers to distribute property in order to achieve an equitable distribution. *Id.* at 307–08, 139 S.W.3d at 148. A trial court's division of nonmarital property will not be reversed unless it is clearly erroneous. *See Dial v. Dial*, 74 Ark.App. 30, 37–38, 44 S.W.3d 768, 773 (2001). A finding of fact is clearly erroneous when the reviewing court is left

with a definite and firm conviction that a mistake has been committed; in reviewing the trial court's findings, the reviewing court gives due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded to each witness's testimony. *Arnoult v. Arnoult,* 2014 Ark. App. 82, at 4, 2014 WL 579934.

The relevant statute is Arkansas Code Annotated section 9–12–315, which provides

(a) At the time a divorce decree is entered:

(1)(A) All marital property shall be distributed one-half (V2) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration: .

(i) The length of the marriage;

(ii) Age, health, and station in life of the parties;

(iii) Occupation of the parties;

(iv) Amount and sources of income;

(v) Vocational skills;

(vi) Employability;

(vii)Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;·

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

. . .

(2) *All other property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable taking into consider-*

*ation those factors enumerated in subdivision (a)(1) of this section, in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage.*

Ark.Code Ann. § 9–12–315(a)(1)(A), (a)(2) (Repl.2009) (emphasis added). The overriding purpose of this statute is to enable the court to make a division of property that is fair and equitable under the specific circumstances. *Copeland,* 84 Ark.App. at 308, 139 S.W.3d at 148–49. And the trial court is given broad powers, under the statute, to distribute all property in divorce cases, marital and non-marital, in order to achieve an equitable distribution. Ark.Code Ann. § 9–12–315(a)(1), (a)(2); *Copeland,* 84 Ark.App. at 308, 139 S.W.3d at 149.

Elvin points out that 5410 W. 11th Street was undisputedly his nonmarital property (the trial court reached the same conclusion), and he acknowledges that the trial court under section 9–12–315 has the flexibility to distribute both marital and nonmarital property to make an equitable division of marital property. However, he argues that section 9–12–315(a)(2), which deals with the division of nonmarital property, does not apply when there is no marital property to be divided. According to Elvin, the true intent of subdivision (a)(2) is to allow the trial court to award nonmarital property only when marital property cannot be equally divided. He claims that the statute was not intended to be used to take nonmarital property from one party and give it to the other when there is no inequity in the division of marital property.

Elvin cites no authority to support his argument, and it contradicts the plain language of the statute, which expressly authorizes the trial court to do precisely

what it did. Furthermore, in distributing Elvin's nonmarital property, the trial court complied with the requirements of subdivision (a)(2) by taking into consideration the factors enumerated in subdivision (a)(1) and stating in writing its basis and reasons for not returning the property to Elvin. In awarding Leona title to Elvin's nonmarital property located at 5410 W. 11th Street, the trial court found that the parties had been married twice; were both in their mid sixties, retired, and receiving social-security benefits; Leona's monthly income was $817 and her expenses were $645; Elvin's monthly income was $2344 and his expenses were $2407; Elvin had $118,312 in an IRA and $19,262 in a checking account; Leona had no bank account or other funds; Elvin had debts of $5288; Leona had no debts; she had very little opportunity or ability to further acquire assets or income; Elvin had the opportunity for further acquisitions ₇of assets and income; he had nonmarital assets, including several homes; Leona lived in the house at 5410 W. 11th Street, with Elvin's permission, for twenty years; she maintained and preserved the property; she rendered homemaker services; and she cared for an adult child with a disability.

We acknowledge Elvin's claim that the trial court clearly erred in giving Leona his nonmarital property because he and Leona lived together as a married couple in 2010 for only a few months. However, the record demonstrates that the parties had a much longer and more involved history together. Furthermore, and most significantly, in this case, section 9–12–315(a)(2) authorized the trial court to distribute Elvin's nonmarital property to Leona based on the equities of their particular situation. Accordingly, we cannot say that the trial court clearly erred in awarding Leona Elvin's nonmarital property located at 5410 W. 11th Street, and we affirm on this point.

■ Under his first point on appeal, Elvin also argues that the trial court erred in finding that he gave Leona the revolver and furniture. He contends that insufficient evidence supports the findings, that there was no reason for him to give the furniture to Leona, and that he merely loaned the firearm to her. We first note that sufficiency of the evidence is not the proper standard of review; instead, we must determine whether the trial court's findings are clearly erroneous. Under the appropriate standard, we hold that the trial court did not clearly err in concluding that Elvin gifted the furniture and firearm to Leona.

■ We have defined a gift as a voluntary transfer of property, without consideration, to another. *Massey v. Massey*, 2014 Ark. App. 111, at 2, 432 S.W.3d 134, 135–36, 2014 WL 554452. In the very nature ₈of a gift, the donor ceases to exercise control over it. *Davis v. Jackson*, 232 Ark. 953, 958, 341 S.W.2d 762, 764 (1961). In this case Leona presented evidence that Elvin voluntarily transferred the bedroom furniture and firearm to her and ceased to exercise control over the property. She said he gave her the bedroom furniture for her birthday and that he gave her the firearm for home protection. The trial court specifically found that Leona's testimony was credible, and we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded to each witness's testimony. *Arnoult*, 2014 Ark. App. 82, at 4, 2014 WL 579934. And we affirm the trial court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 369 Ark. 31, 34, 250 S.W.3d 232, 235 (2007). Under the facts of this case, we hold that the trial court's findings that Elvin gave the bedroom furniture and the

revolver to Leona were not clearly erroneous and affirm on this point.

■ Turning to Elvin's final point on appeal, he contends that the trial court erred in awarding Leona alimony. The decision to grant alimony lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Dozier v. Dozier*, 2014 Ark. App. 78, at 4, 432 S.W.3d 82, 84–85, 2014 WL 324557. A trial court abuses its discretion when it exercises its discretion improvidently, or thoughtlessly and without due consideration. *Id.*, 432 S.W.3d at 84–85.

■ The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties, in light of the particular facts of each case. *Id.*, 432 S.W.3d at 84–85. The primary factors to consider are the financial need of one spouse and the other spouse's ability to pay. *Id.*, 432 S.W.3d at 84–85. Other factors include the financial circumstances of both parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Id.* at 4–5, 432 S.W.3d at 84–85. The amount of alimony has never been reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. *Id.* at 5, 432 S.W.3d at 85. If alimony is awarded, it should be set in an amount that is reasonable under the circumstances. *Id.*, 432 S.W.3d at 85.

Elvin contends that the trial court did not properly consider all of the relevant factors in its decree. He also argues that there is no justification for alimony in this case because both parties are retired and on fixed incomes, the difference in their fixed incomes is not "staggering," and the parties' marriage lasted only a few months. He concedes that he owns more nonmarital assets than Leona, but states that he should not be penalized for managing his funds wisely.

We hold that the trial court did not abuse its discretion in awarding Leona alimony. The trial court's decree specifically stated that it considered all of the relevant alimony factors. It further noted that

> [t]here is a considerable disparity in income and resources between the parties. . . . [Leona] has very limited income and is below the federal poverty guidelines. She lives on a limited and frugal budget. She has a home that is in need of repairs. In addition, she will be required to pay property taxes and insure her home. This will require additional expense as part of her budget.

After finding that Leona had the need for financial support, the trial court found that Elvin had the resources to pay. We also note that the alimony award is not permanent-it is limited to a three-year period. Given the analysis of alimony in the decree, we cannot say that the trial court failed to consider the proper factors or abused its discretion. Accordingly, we affirm.

Affirmed.

GLADWIN, C.J., and HIXSON, J., agree.